1  BARRY J. PORTMAN
   Federal Public Defender
2  GEOFFREY A. HANSEN
   Chief Assistant Federal Public Defender
3  JAY NELSON
   Law Clerk
4  19th Floor Federal Building – Box 36106
   450 Golden Gate Avenue
5  San Francisco, CA 94102
   Telephone: (415) 436-7700
6
   Counsel for Defendant WHITFIELD
7

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12 | UNITED STATES OF AMERICA,      )   No. CR 07-366 VRW
                                    )
13 |          Plaintiff,             )   **DEFENDANT'S NOTICE OF MOTION
                                    )   AND MEMORANDUM IN SUPPORT OF
14 | vs.                             )   MOTION TO SUPPRESS EVIDENCE**
                                    )
15 | MARCUS WHITFIELD,               )
                                    )   Date:  August 28, 2007
16 |          Defendant.             )   Time: 10:30 a.m.
                                    )   Honorable Vaughn R. Walker

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     MS. COLVIN'S CONSENT TO THE SEARCH WAS INVOLUNTARY. . . . . . 5

    II.    MS. COLVIN LACKED ACTUAL AUTHORITY TO CONSENT TO THE
           SEARCH OF 1855 SUNNYDALE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    III.   MS. COLVIN LACKED APPARENT AUTHORITY TO CONSENT TO THE
           SEARCH. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    IV.   THE OFFICERS LACKED AUTHORITY TO CONDUCT A WARRANTLESS
           PROBATION SEARCH OF 1855 SUNNYDALE BECAUSE THEY
           KNEW MR. WHITFIELD WAS AN OVERNIGHT GUEST RATHER
           THAN A RESIDENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           A.    The Government Possessed Ample Evidence That Mr. Whitfield Moved
                  to Marin City. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           B.    As an Overnight Guest, Mr. Whitfield Possessed a Legitimate
                  Expectation of Privacy Under the Fourth Amendment. . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

327 F.2d 301 (9th Cir. 1964) .................................................................................. 7

*Georgia v. Randolph*, 547 U.S. 103 (2006) ........................................................ 4, 5

*Illinois v. Rodriguez*, 497 U.S. 177 (1990) ............................................................ 8

*Lenz v. Winburn*, 51 F.3d 1540 (11th Cir. 1995) ................................................... 7

*Minnesota v. Olson*, 495 U.S. 91 (1990) .............................................................. 11

*Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005) .................................................... 9

*Rakas v. Illinois*, 439 U.S. 128 (1978) ................................................................. 11

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) .................................................. 5

*Stoner v. California*, 376 U.S. 483 (1964) ............................................................ 8

*United States v. Chan-Jimenez*, 125 F.3d 1324 (9th Cir. 1997) ......................... 5, 6

*United States v. Davis*, 332 F.3d 1163 (9th Cir. 2003) ............................... 8, 11, 12

*United States v. Gutierrez-Hermosillo*, 142 F.3d 1225 (10th Cir. 1998) ............... 8

*United States v. Hearn*, 496 F.2d 236 (6th Cir. 1974) ........................................... 5

*United States v. Howard*, 447 F.3d 1257 (9th Cir. 2006) .................................... 10

*United States v. Jones*, 528 F.2d 303 (9th Cir. 1975) ............................................ 5

*United States v. Knights*, 534 U.S. 112 (2001) ..................................................... 9

*United States v. Matlock*, 415 U.S. 164 (1974) .................................................. 6, 7

*United States v. Mendenhall*, 446 U.S. 544 (1980) ............................................... 6

*United States v. Reid*, 226 F.3d 1020 (9th Cir. 2000) ............................................ 8

*United States v. Ruiz*, 428 F.3d 877 (9th Cir. 2005) .................................................................. 8

*United States v. Shaibu*, 920 F.2d 1423 (9th Cir. 1990) ............................................................. 5

*Wong Sun v. United States*, 371 U.S. 471 (1963) ...................................................................... 4

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1) ........................................................................................................ 2, 3, 4

U.S. Const. amend. IV .................................................................................................................. 4

BARRY J. PORTMAN
Federal Public Defender
GEOFFREY A. HANSEN
Chief Assistant Federal Public Defender
JAY NELSON
Law Clerk
19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant WHITFIELD

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 07-366 VRW |
|---|---|---|
| Plaintiff, | ) | **DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE** |
| vs. | ) | |
| MARCUS WHITFIELD, | ) | Date: August 28, 2007 |
| Defendant. | ) | Time: 10:30 a.m. |
| | ) | Honorable Vaughn R. Walker |

**NOTICE OF MOTION**

TO: UNITED STATES OF AMERICA, PLAINTIFF; AND SCOTT SCHOOLS, UNITED STATES ATTORNEY; AND TAMARA WEBER, ASSISTANT UNITED STATES ATTORNEY.

PLEASE TAKE NOTICE that on August 28, 2007 at 10:30 a.m., in the courtroom of the Honorable Vaughn R. Walker, defendant Marcus Whitfield will move the Court for an order to suppress all evidence resulting from the unlawful search of his mother's home on April 29, 2007. Mr. Whitfield respectfully requests an evidentiary hearing if the Court is unable to ascertain the legality of the search based on the parties' submissions.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Mr. Whitfield is charged under 18 U.S.C. § 922(g)(1) with possession of a firearm by a felon. The San Francisco police violated Mr. Whitfield's Fourth Amendment rights when they searched his mother's apartment without a warrant and without valid consent. Mr. Whitfield moves to suppress all fruits of this unlawful warrantless search.

### STATEMENT OF FACTS

In the early morning hours of April 28, 2007, two San Francisco police officers were flagged down in the Sunnydale district of San Francisco by a woman named Cavia Daniels. *See* Declaration of Cavia Daniels, attached as Exhibit A. Ms. Daniels claimed that she and her boyfriend, whom she identified as the defendant Marcus Whitfield, had been involved in a domestic dispute while visiting his mother's house at 1855 Sunnydale Ave. *Id.* She made a statement to the police about the altercation, and claimed during this conversation that Mr. Whitfield kept a gun under a mattress in a room at his mother's house. *Id.*

Although the police observed no visible injuries to Ms. Daniels, she went to the hospital for possible treatment, which she declined. *Id.* While at the hospital, Ms. Daniels was told about emergency protective order procedures, and based on information she gave the police they obtained such an order which directed the defendant to move out of the apartment which he shared with Ms. Daniels and her three children at 967 Drake Ave., Marin City, California. *See* Application for Emergency Protective Order dated April 28, 2007, attached as Exhibit B. Mr. Whitfield, Ms. Daniels, and Ms. Daniels's three children lived on Drake Ave. in Marin City on April 28, 2007. *See* Daniels Decl., Exhibit A. They slept in the upstairs bedroom at 1855 Sunnydale approximately twice a week. *Id.* Officer Robert Kobold listed Mr. Whitfield's address as Drake Ave. on the incident report dated April 29. *See* Incident Report of Officer Robert C. Kobold, attached as Exhibit C.

After obtaining the protective order against Mr. Whitfield, the police located and arrested

1  him on April 29. *Id.* Late that night, the police returned to Sunnydale to search for the firearm.
2  *Id.* At that time, Mr. Whitfield's fifteen year-old sister, Donecia Colvin, was home alone at 1855
3  Sunnydale. *See* Declaration of Donecia Colvin, attached as Exhibit D. At 11:30 p.m. Ms. Colvin
4  was in her bedroom.[1] *Id.* She heard a knock at the front door and went to see who was there. *Id.*
5  Through the upstairs window, Ms. Colvin observed two San Francisco police officers with their
6  hands on their pistols. *Id.* The officers told Ms. Colvin that they needed to search the apartment,
7  and they instructed Ms. Colvin to open the door and let them in. *Id.* Ms. Colvin informed them
8  that her mother was not home. *Id.* Ms. Colvin's mother instructs her not to open the door for
9  strangers when she is home alone, particularly after dark, because they live in the dangerous
10 Sunnydale housing project. *Id.* The officers insisted that Ms. Colvin open the door. *Id.* The
11 officers' hands were on their weapons during the entire exchange. *Id.*

12       Frightened and intimidated, Ms. Colvin opened the door. *Id.* The officers entered the
13 home uninvited, again declaring that they needed to search the apartment. *Id.* They never
14 informed Ms. Colvin of her right to refuse consent, and they never obtained her written consent.
15 *Id.* It is uncontested that the officers did not possess a search warrant. *See* Kobold Report.,
16 Exhibit C.

17       The officers asked Ms. Colvin to call her mother, and Ms. Colvin replied that she did not
18 have her mother's phone number. *See* Colvin Decl., Exhibit D. The officers allege that they
19 asked whether Ms. Colvin frequently stays home alone "for several days," and that she responded
20 "yeah." *See* Kobold Report, Exhibit C. Ms. Colvin insists that the most she is ever left home
21 alone is one night. *See* Colvin Decl., Exhibit D.

22       The officers asked Ms. Colvin if Mr. Whitfield was her brother. *Id.* Ms. Colvin said that
23 he was. *Id.* The officers inquired whether Mr. Whitfield lived or stayed at 1855 Sunnydale. *Id.*

24 _____

25     [1] Ms. Colvin is in the tenth grade at Principal Center Collaborative, a therapeutic school
   in San Francisco. *Id.* Principal Center Collaborative provides behavioral health treatment and
26 educational enhancement services to youth involved in the juvenile justice system. *Id.*

Defendant's Motion to Suppress Evidence
No. CR 07-366 VRW                          3

1  Ms. Colvin said that he stayed there sometimes. *Id.* The officers asked where Mr. Whitfield
2  slept when he stayed at the apartment. *Id.* Ms. Colvin informed them that he stayed in an
3  upstairs bedroom. *Id.* The officers instructed Ms. Colvin to lead the way upstairs, and that they
4  would follow. *Id.* Ms. Colvin complied. *Id.* Once upstairs, the officers told Ms. Colvin to lift
5  the mattress on Mr. Whitfield's bed. *Id.* Ms. Colvin declined, stating it was not her bed. *Id.*
6  The police officers reiterated their demand, and Ms. Colvin complied. *Id.* Ms. Colvin lifted a
7  second mattress, and the police officers discovered the Intratec 9 mm semi-automatic handgun at
8  issue in this case. *Id.*

9  After the defendant was arrested, Ms. Daniels was again interviewed on the record by
10 police about the gun and Mr. Whitfield's relationship to it. *See* Daniels Decl., Exhibit A. Ms.
11 Daniels explained that a few weeks prior to the domestic dispute with Mr. Whitfield, she had
12 been the victim of an attempted sexual assault in the hallway of the apartment complex in Marin
13 City where she and Mr. Whitfield lived. *Id.* After the incident, she told Mr. Whitfield that she
14 planned to buy a gun to protect herself against future attacks. *Id.* Mr. Whitfield attempted to
15 dissuade her from getting a firearm, but Ms. Daniels was insistent and asked Mr. Whitfield to
16 help her get a gun. *Id.* She eventually persuaded Mr. Whitfield to trade an old, semi-operable
17 car which she owned for a gun, which he did. *Id.* The gun was taken to Mr. Whitfield's
18 mother's home in the Sunnydale projects, and Ms. Daniels told police that she planned to take it
19 to Marin City when she was not in the company of her children. *Id.* As is described above, it
20 was seized by police before she could move it to Marin City. *See* Kobold Report, Exhibit C.

21                                    **ARGUMENT**

22  The Fourth Amendment provides that "the right of the people to be secure . . . against
23 unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Courts may
24 suppress evidence obtained in violation of the Fourth Amendment. *See, e.g., Wong Sun v. United*
25 *States*, 371 U.S. 471, 484-85 (1963). Warrantless searches inside a home are presumptively
26 unreasonable. *Georgia v. Randolph*, 547 U.S. 103, 1520 (2006). Law enforcement agents may

1 overcome this presumption if they obtain voluntary consent from a person possessing actual or
2 apparent authority. *Id.*
3   This Court should suppress all evidence obtained as a result of the April 29 search for
4 four reasons: (1) Ms. Colvin's consent was involuntary; (2) she lacked actual authority to
5 consent; (3) she lacked apparent authority to consent; and (4) the police lacked probable cause to
6 believe that Mr. Whitfield lived at 1855 Sunnydale Avenue.

7 **I. MS. COLVIN'S CONSENT TO THE SEARCH WAS INVOLUNTARY.**

8   This Court should suppress the gun found at Whitfield's mother's home because Ms.
9 Colvin involuntarily consented to the search. "The government bears the heavy burden of
10 demonstrating that the consent was freely and voluntarily given." *United States v.*
11 *Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997). The government's burden is heaviest when
12 the police seek consent to enter a home. *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir.
13 1990). Mere submission to a show of authority is insufficient to demonstrate voluntariness.
14 *Chan-Jimenez*, 125 F.3d at 1328. The government "must show that there was no duress or
15 coercion, express or implied[,]" and that the consent was "unequivocal and specific" and "freely
16 and intelligently given." *Shaibu*, 920 F.2d at 1426 (internal quotations omitted).
17   The Supreme Court has established a totality of the circumstances test to ascertain the
18 voluntariness of consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The
19 *Schneckloth* Court suggested several factors to consider in evaluating voluntariness, including:
20 (1) knowledge of the right to refuse consent; (2) age; (3) intelligence; (4) education; (5) the
21 length and nature of the questioning; and (6) the conduct of the police. *Id.* at 226-27. The
22 cooperation of the consenter is also a factor. *United States v. Jones*, 528 F.2d 303, 304 (9th Cir.
23 1975). Cooperation with the authorities may suggest voluntariness, but it may also reveal the
24 extent to which the consenter involuntarily submitted to a show of authority. *Compare id.* at 304
25 (finding consent voluntary because defendant offered to help with search, and when asked,
26 provided tools for investigators), *with United States v. Hearn*, 496 F.2d 236, 243 (6th Cir. 1974)

1  (finding consent involuntary despite, *inter alia*, fact that defendant acquiesced to officers' request
2  to show them location of contraband).

3  Applying these factors to the present case, Ms. Colvin's consent on April 29 was
4  involuntary. The investigating officers did not provide Ms. Colvin notice of her right to refuse or
5  obtain a written consent form. As the Supreme Court has noted, knowledge of the right to refuse
6  consent is "highly relevant" to the determination of voluntariness. *United States v. Mendenhall*,
7  446 U.S. 544, 558-59 (1980). In addition, Ms. Colvin is only fifteen years old, a minor, and has
8  just recently completed the ninth grade at a special education high school.

9  Moreover, Ms. Colvin's interaction with the police on April 29 was highly coercive. The
10 officers arrived at her home on 11:30 p.m. on a Sunday night. Ms. Colvin was home alone in the
11 dangerous Sunnydale housing project. She was confronted by two police officers with their
12 hands on their side arms. The Ninth Circuit has recognized that this stance is inherently
13 coercive. *Chan-Jimenez*, 125 F.3d at 1327-28. The officers spoke to Ms. Colvin in an
14 instructive, demanding tone rather than in a considerate, respectful manner. They told her that
15 she had to open the door and let them in, and that they needed to search the house. Even though
16 Ms. Colvin personally led the officers to the upstairs bedroom and lifted the mattress, this
17 behavior was the result of intimidation and coercion rather than a voluntary desire to provide
18 assistance. In sum, Ms. Colvin did not provide unequivocal, voluntary consent to the officers to
19 search her home. Instead, she followed the officers' orders and succumbed to their show of
20 authority.

21 **II.   MS. COLVIN LACKED ACTUAL AUTHORITY TO CONSENT TO THE SEARCH OF 1855 SUNNYDALE.**
22
23 Even if Ms. Colvin's consent was voluntary, she lacked actual authority to consent. A
24 third-party occupant possesses actual authority to consent to a warrantless search if she has
25 "common authority" over the premises to be searched. *United States v. Matlock*, 415 U.S. 164,
26 171 (1974). Common authority exists if the resident has mutual use of or joint access to the

1  property, or if the other co-occupants assume the risk that she will allow the premises to be
2  searched. *Id.* at 171 n.7. Like any third-party, a juvenile possesses actual authority to consent if
3  she has the right to permit inspection in her own right, or if her co-occupants have assumed the
4  risk that she will allow the common areas to be searched. *Lenz v. Winburn*, 51 F.3d 1540, 1548
5  (11th Cir. 1995). The government bears the burden of proving by a preponderance of the
6  evidence that the consenting third-party possessed common authority. *Matlock*, 415 U.S. at 177.

   Minors must receive authorization from the adults of the household to admit strangers
8  into the home. In *Davis v. United States*, the Ninth Circuit ruled that an eight year-old girl
9  possessed authority to invite officers into the foyer of her home. 327 F.2d 301, 305 (9th Cir.
10 1964). The court noted that because the girl's parents never instructed her not to admit strangers,
11 opening the door and inviting the officers into the entryway was in no way "unusual or
12 unauthorized." *Id.* at 304. In addition, the court stressed that the police arrived in the middle of
13 the day, and that the officers did not request an invitation into the home or force their way inside
14 by show of authority. *Id.* at 304-05.

   In contrast, Ms. Colvin lacked authority to admit the police. Unlike the girl in *Davis*, Ms.
16 Colvin received specific instructions from her mother not to admit strangers into the home.
17 Accordingly, Ms. Colvin was not authorized to consent to the search. Moreover, because she
18 was not permitted to admit strangers into the home, none of her co-occupants assumed the risk
19 that she would consent to a search. Also unlike *Davis*, the officers in this case aggressively
20 sought entry to the Colvins' home at a late hour. They intimidated Ms. Colvin by demanding to
21 be let in, and by positioning their hands on their pistols. As such, the officers' entry into 1855
22 Sunnydale was highly "unusual" and "unauthorized."

23 **III. MS. COLVIN LACKED APPARENT AUTHORITY TO CONSENT TO THE SEARCH.**
24
25 Ms. Colvin also lacked apparent authority to consent. A warrantless third-party consent
26 search is valid if the police reasonably, however erroneously, believe the third-party has

Defendant's Motion to Suppress Evidence
No. CR 07-366 VRW                                7

1  authority. *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990). Because juveniles may, as a matter of
2  law, possess actual authority to consent, they may also possess apparent authority to consent.
3  *United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1230 (10th Cir. 1998). The Supreme
4  Court has cautioned that the apparent authority doctrine is to be applied sparingly, because the
5  constitutional right to be free from unreasonable searches and seizures should not be eroded by
6  strained applications of the law of agency or by unrealistic doctrines of apparent authority.
7  *Stoner v. California*, 376 U.S. 483, 488 (1964).

8        Third-parties lack apparent authority to consent if the investigating officers are aware that
9  the third-party exercises no control over the area to be searched. *United States v. Davis*, 332 F.3d
10 1163, 1170 (9th Cir. 2003) (finding no apparent authority where housemate informed officers
11 that the defendant's bedroom was not hers). Third-parties also lack apparent authority if they
12 disclaim ownership or control of the items to be searched. *See United States v. Ruiz*, 428 F.3d
13 877, 881-82 (9th Cir. 2005) (finding apparent authority where consenter failed to disclaim
14 ownership or control).

15       The Ninth Circuit applies a three part test to evaluate apparent authority. *United States v.*
16 *Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000). In order to establish apparent authority, the
17 government must prove that (1) the officer believed an untrue fact which led him to believe that
18 the consenter possessed authority; (2) it was objectively reasonable for the officer to believe that
19 fact; and (3) if the fact were true, the consenter would have had actual authority. *Id.*

20       Based on the information available to the officers at the time of the April 29 search, the
21 government is unable to satisfy the first prong of the test. When the police entered the house,
22 they questioned Ms. Colvin about her mother's whereabouts and whether Ms. Colvin was often
23 left alone by her mother. These facts indicate that the police were aware that Ms. Colvin was a
24 minor who did not have permission to allow strangers into her mother's apartment. Moreover,
25 based on their conversation with Ms. Colvin, the officers knew that the upstairs bedroom was
26 where Mr. Whitfield stayed occasionally. The police had no indication that Ms. Colvin ever

Defendant's Motion to Suppress Evidence
No. CR 07-366 VRW                              8

1  stayed in the room, or that she kept any belongings there. Rather, Ms. Colvin's statement that the
2  room was where Mr. Whitfield occasionally slept over implied that the room, as well as the items
3  contained therein, were not Ms. Colvin's. As such, the officers never believed an untrue fact
4  which could have reasonably led them to believe that Ms. Colvin exercised control over the room
5  or the belongings inside.

6        It also bears repeating that Ms. Colvin disclaimed authority at least twice. First, her
7  initial response when the officers asked to be let in was that her mother was not home. This
8  response should have alerted the officers that Ms. Colvin was not permitted to open the door for
9  strangers, particularly at 11:30 p.m. when she was home alone. Second, prior to lifting up the
10 mattresses, Ms. Colvin informed the officers that the bed was not hers to lift. Under these facts,
11 the government cannot satisfy the first factor of the apparent authority test. Accordingly, it was
12 unreasonable for the police to believe that Ms. Colvin possessed authority to consent to the
13 search.

14 **IV.   THE OFFICERS LACKED AUTHORITY TO CONDUCT A WARRANTLESS PROBATION SEARCH OF 1855 SUNNYDALE BECAUSE THEY KNEW MR.**
15 **WHITFIELD WAS AN OVERNIGHT GUEST RATHER THAN A RESIDENT.**

16     A.   The Government Possessed Ample Evidence That Mr. Whitfield Moved to Marin City.
17
18       The government may assert that the police did not require Ms. Colvin's consent to
conduct a warrantless search because, as a condition of his probation, Mr. Whitfield was subject
19
to warrantless searches of his residence. This argument lacks merit because the officers knew
20
that Mr. Whitfield lived in Marin City rather than San Francisco.
21
22       When a probationer is subject to a warrantless search condition, law enforcement officials
may conduct a warrantless search of the probationer's home if the officials have reasonable
23
suspicion that he is engaged in criminal activity. *United States v. Knights*, 534 U.S. 112, 121
24
(2001). In order to enter the probationer's home, the police must possess probable cause to
25
believe that the home to be searched is the probationer's residence. *Motley v. Parks*, 432 F.3d
26

Defendant's Motion to Suppress Evidence
No. CR 07-366 VRW                                    9

1072, 1080 (9th Cir. 2005) (en banc). The Ninth Circuit adheres to a stringent probable cause standard. *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006). To establish probable cause, the facts known to the officers at the time of the search must be sufficient to support a belief in a "man of reasonable caution" that the probationer lives at the residence to be searched. *Id.*

In *Howard*, the court ruled that the police improperly searched an apartment rented by the defendant's girlfriend. *Id.* at 1258. The court held that the government failed to establish probable cause that Howard lived in his girlfriend's apartment rather than the residence he reported to his probation officer. *Id.* In arriving at this holding, the court identified several important factors in evaluating whether the police possessed probable cause to search. *Id.* at 1265-66. Among others, these factors include: (1) that the probationer did not appear to reside at any address other than the one searched; and (2) that the probationer or his co-resident identified the residence as the probationer's home. *Id.* The court stressed that because it is against the probationer's penal interest to admit living somewhere other than the location on file with the probation office, it should be given great weight if the probationer or a co-resident states that the probationer lives somewhere else. *Id.* at 1266.

These factors weigh in favor of Mr. Whitfield. All current information available to the officers at the time of the search indicated that Mr. Whitfield had moved into an apartment in Marin City with Ms. Daniels and her children.

With respect to the first *Howard* factor, the police possessed ample evidence that Mr. Whitfield lived on Drake Avenue rather than on Sunnydale, as the records in this case prove. First, Officer Kobold listed Mr. Whitfield's address as Drake Ave. on the front page of the *very same* incident report in which he alleged the search of 1855 Sunnydale was a probation search. As such, not even the officer who conducted the search believed that Mr. Whitfield lived on Sunnydale. Second, the emergency protective order dated April 28, the day before the search, directed Mr. Whitfield to "move out" of Drake Ave. This fact indicates that the police knew Mr.

Defendant's Motion to Suppress Evidence
No. CR 07-366 VRW                                10

1  Whitfield lived in Marin City.

2  In addition, by their own account, the officers asked Ms. Colvin whether Mr. Whitfield "stays or lives at the residence and she answered, 'yeah, he stays here.'" Thus, when explicitly given the option between "stay" and "live," Ms. Colvin used the word "stay" to describe Mr. Whitfield's relationship with 1855 Sunnydale. Shortly thereafter, the officers asked Ms. Colvin where Mr. Whitfield "stays when in the residence." By phrasing their question in this way, the officers implicitly conceded that Mr. Whitfield no longer lived at 1855 Sunnydale, but merely visited occasionally.

Prior to the search, Ms. Daniels also informed the police that Mr. Whitfield did not live at 1855 Sunnydale. After he was arrested, Mr. Whitfield denied living on Sunnydale. As the *Howard* court instructed, this Court should lend great credibility to these explicit assertions that Mr. Whitifield occasionally stayed, but did not live, on Sunnydale Ave. Taken together, these facts prove that the investigating officers knew Mr. Whitfield had moved away from 1855 Sunnydale.

    B.   As an Overnight Guest, Mr. Whitfield Possessed a Legitimate Expectation of Privacy Under the Fourth Amendment.

The government may argue that Mr. Whitfield lacks standing to challenge the search if he lived in Marin City rather than San Francisco. It is true that Mr. Whitfield must prove that he possessed a legitimate expectation of privacy in the premises searched in order to invoke the Fourth Amendment. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978). It is well-settled, however, that an overnight guest possesses a legitimate expectation of privacy in the place where he sleeps. *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990). Specifically, in the Ninth Circuit, an overnight guest possesses a legitimate expectation of privacy under the bed in a room where he occasionally stays overnight. *Davis*, 332 F.3d at 1168.

In *Davis*, the defendant stored a shotgun in a bag underneath his girlfriend's bed. *Id.* at 1166. The court held that, as an overnight guest, Davis possessed a legitimate expectation of

Defendant's Motion to Suppress Evidence
No. CR 07-366 VRW                                     11

privacy under his girlfriend's bed. *Id.* at 1168. The court noted that "[i]f the Fourth Amendment does not protect Davis' expectation of privacy in the contents of his bag, stored under the bed in an apartment where he sleeps and keeps his belongings, we find it difficult to imagine what the Fourth Amendment does protect." *Id.*

The facts of the present case are nearly identical to *Davis*. Like Davis, Mr. Whitfield occasionally slept in the room that was searched by the police. Moreover, he stored belongings in the room and under the bed, clearly manifesting an expectation of privacy. Therefore, under *Davis*, Mr. Whitfield possessed a legitimate expectation of privacy in the upstairs bedroom. As such, he may invoke the protections of the Fourth Amendment.

## CONCLUSION

For the foregoing reasons, Mr. Whitfield respectfully requests that this Court suppress all evidence arising from the illegal search of his mother's home on April 29, 2007. If the Court is unable to ascertain the legality of the search based on the parties' submissions, Mr. Whitfield requests that the Court hold an evidentiary hearing to resolve this issue.

Dated:    July 17, 2007

                                        Respectfully submitted,

                                        BARRY J. PORTMAN
                                        Federal Public Defender

                                        /S/

                                        GEOFFREY HANSEN
                                        Chief Assistant Federal Public Defender

                                        JAY NELSON
                                        Law Clerk