SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

W. DOUGLAS SPRAGUE (CSBN 202121)
Chief, Criminal Division

TAMARA WEBER (ILSBN 6270925)
Special Assistant United States Attorney

450 Golden Gate Avenue
San Francisco, California 94102
Telephone: (415) 436-6838
Facsimile: (415) 436-7234

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07 0366 VRW |
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| v. | |
| MARCUS WHITFIELD, | Hearing: August 28, 2007 |
| Defendant. | Time: 10:30 a.m. |
| | Court: Hon. Vaughn R. Walker |

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

THE DEFENDANT'S PROBATION AND PAROLE CONDITIONS...... .............2

STATEMENT OF FACTS.....................................................................................3

LEGAL ANALYSIS..............................................................................................8

      A.  THE DEFENDANT HAS NOT DEMONSTRATED A REASONABLE
      EXPECTATION OF PRIVACY WITH RESPECT TO 1855
          SUNNYDALE AVENUE......................................................................8

      B. THE SEARCH OF 1855 SUNNYDALE AVENUE WAS A VALID
          PROBATION SEARCH.......................................................................10

      C. THIRD PARTY CONSENT IS NOT REQUIRED WHERE
          OFFICERS ESTABLISHED PROBABLE CAUSE TO
          BELIEVE THE DEFENDANT LIVED AT 1855
          SUNNYDALE AVENUE....................................................................15

      D. OFFICERS HAD REASONABLE SUSPICION OF
          WRONG DOING.................................................................................16

      E.  POLICE OFFICERS MAY SEARCH BOTH 1855
          SUNNYDALE AND 964 DRAKE AVENUE.........................................18

CONCLUSION......................................................................................................18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Griffen v. Wisconsin*, 483 U.S. 868 (1987)........................................................9, 17

*Minnesota v. Carter*, 525 U.S. 83 (1998)............................................ .......8

*Moore v. Vega*, 371 F. 3d 110 (2004)..................................................................13

*Motley v. Parks*, 432 F. 3d 1072 (9th Cir. 2005)...............................10, 13, 14,15, 16, 18

*Rakas v. Illinois*, 439 U.S. 128 (1978)........................................... ...8

*Scott v. United States*, 436 U.S. 128 (1978).......................................................17

*Terry v. Ohio*, 392 U.S. 1 (1968)........................................................................17

*United States v. Conway*, 122 f. 3d 841 (9th Cir. 1197)....................................10

*United States v. Dally*, 606 F. 2d 861 (9th Cir. 1979).......................................10, 14

*United States v. Harper*, 928 F. 2d 894 (9th Cir. 1991)....................................13

*United States v. Howard*, 447 F. 3d 1257 (9th Cir. 2006).................................10, 14

*United States v. Knights*, 534 U.S. 112 (2001).................................9, 12, 13, 17, 18

*United States v. Watts*, 67 F. 3d 790 (9th Cir. 1995)........................................10

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1).........................................................................................1

United States Constitution, Amendment IV.......................................................1, 8

## CALIFORNIA STATE STATUTES

California Health and Safety Code, Section 11351...........................................2

California Penal Code, Section 245..................................................................2

California Penal Code, Section 245 (c)............................................................2

Welfare and Institution Code, Section 871 (b)...................................................2

1  SCOTT N. SCHOOLS (SCBN 9990)
   United States Attorney

2
3  W. DOUGLAS SPRAGUE (CSBN 202121)
   Chief, Criminal Division

4  TAMARA WEBER (ILSBN 6270925)
   Special Assistant United States Attorney

5
6     450 Golden Gate Avenue
      San Francisco, California 94102
7     Telephone: (415) 436-6838
      Facsimile: (415) 436-7234

8  Attorneys for Plaintiff

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12  UNITED STATES OF AMERICA,        )   No. CR 07 0366 VRW
                                     )
13         Plaintiff,                )   **UNITED STATES' OPPOSITION TO**
                                     )   **DEFENDANT'S MOTION TO**
14      v.                           )   **SUPPRESS EVIDENCE**
                                     )
15  MARCUS WHITFIELD,                )   Hearing:  August 28, 2007
                                     )   Time:     10:30 a.m.
16         Defendant.                )   Court:    Hon. Vaughn R. Walker
                                     )
17  _____)

18

19                    **I. INTRODUCTION**

20         The defendant is charged in a two count indictment with (1) Felon in Possession of

21  Ammunition, in violation of 18 U.S.C. § 922(g)(1); and (2) Felon in Possession of Firearm, in

22  violation of 18 U.S.C. § 922(g)(1). On July 17, 2007, the defendant filed a Motion to Suppress

23  Evidence primarily relating to the April 29, 2007 probation search of 1855 Sunnydale Avenue,

24  San Francisco, CA.

25         The Motion to Suppress Evidence is fatally flawed because the defendant has not

26  established a reasonable expectation of privacy at 1855 Sunnydale Avenue, and so cannot claim

27  the protection of the Fourth Amendment. Even if he had, the search was a valid probation

28  search, supported by reasonable suspicion, and thus constitutionally permissible.

## II. THE DEFENDANT'S PROBATION AND PAROLE CONDITIONS

On January 24, 2003, Marcus Whitfield was convicted as a juvenile and committed to the California Youth Authority for 8 years for the following offenses: (1) Minor in Possession of a Concealed Firearm, California Penal Code, Section 245; (2) Escape from a County Facility with Force; Welfare and Institution Code, Section 871 (b) and (3) Assault with Intent to Inflict Bodily Harm on a Peace Officer, California Penal Code, Section 245 (c). *See* Declaration of Parole Agent Steve Parker, attached as Exhibit A

On June 1, 2006, in the San Francisco County Superior Court, Marcus Whitfield pled guilty to Possession of a Controlled Substance for Sale or Purchase, a felony under Section 11351 of the California Health and Safety Code. *See* Reporter's Transcript of Proceeding, attached as Exhibit B. On June 22, 2006, in the San Francisco County Superior court, Marcus Whitfield was sentenced to 82 days in County jail with time considered served and three years Probation. *See* Commitment Order, attached as Exhibit C. A condition of Whitfield's Probation is a warrantless search provision which states, "Defendant is subject to a warrantless search condition, as to defendant's person, property, premises and vehicle, any time of the day or night, with or without probable cause, by any peace, parole probation officer." *See* Minutes from the Superior Court of California, attached as Exhibit D. On this same day, Whitfield reported to an Investigating Probation Officer that his home residence is 1855 Sunnydale Avenue, San Francisco, CA. Whitfield is currently on Probation until June 21, 2009. *See* Declaration of Probation Officer Steve Fitzpatrick, attached as Exhibit E.

On June 26, 2007, Whitfield was transferred to the custody of the California Youth Authority and remained in custody for five months for a parole revocation, as a result of his June 22, 2007 felony conviction for Possession of a Controlled Substance for Sale or Purchase. On November 8, 2006, after serving five months in the California Youth Authority, Whitfield was released and placed on Parole. Upon his release from custody, Whitfield reported to the Parole Board that his home address was going to be 943 Drake Avenue, Sausalito, California. *See* Parole Agent Parker Decl., Exhibit A.

A condition of Marcus Whitfield's parole is a warrantless search condition which

states, "You and your residence and any property under your control may be searched without a warrant by a parole agent of the Department of the Youth Authority, parole agent of the Youthful Offender Parole Board or any peace officer." *See* Condition of Parole, attached as Exhibit F. Whitfield is on Parole until March 21, 2010.

According to the defendant's Probation Officer, Steve Fitzpatrick, all individuals on Adult Felony Probation must report a change of home residence to the Probation Department in person or via telephone, fax or email. From June 22, 2006 to the present, the defendant has never changed his address with the Probation Department. Since the defendant's date of conviction on June 22, 2006, the defendant has met with his Probation Officer and has talked to him over the telephone on numerous occasions. The defendant stated to Probation Officer Fitzpatrick in the meetings and on the telephone that his home address is 1855 Sunnydale Avenue in San Francisco. The only home address that has ever been on file with the Probation Department for Marcus Whitfield has been 1855 Sunnydale Avenue, San Francisco, CA. *See* Probation Officer Fitzpatrick Decl., Exhibit E.

### III. STATEMENT OF FACTS

On April 28, 2007 at 12:21 a.m., Officers Ortiz and Anderson were flagged down in their marked police car, at the intersection of Sunnydale Avenue and Hahn Street, by Cavia Daniels. Ms. Daniels told the officers that she and her boyfriend, Marcus Whitfield, got into a verbal argument at his residence located at 1855 Sunnydale Avenue in San Francisco. Ms. Daniels described how Marcus Whitfield grabbed her by her sweatshirt and dragged her out of the residence. When she was outside of the residence, Ms. Daniels told officers that Marcus Whitfield grabbed her head with both of his hands and threw her to the ground. Ms. Daniels stated her cell phone fell out of her pocket as she tried to call 911, and while she was on the ground she bit Marcus Whitfield on his finger. Ms. Daniels stated Whitfield tried to bite her ear but was unsuccessful and then he went back into 1855 Sunnydale Avenue. *See* Declaration of Officer Ortiz, attached as Exhibit G.

Ms. Daniels told the officers that Marcus Whitfield's mother saw the whole incident and she did nothing to stop the physical attack. Ms. Daniels stated she has been dating Whitfield

since February of 2006 and she is pregnant with his child.  Officer Ortiz noticed that Ms. Daniels was visibly pregnant on this day.  Ms. Daniels said she was afraid of Marcus Whitfield and that he had physically abused her in the past.  Ms. Daniels informed the officers that in January of 2007 Whitfield broke her arm.  *Id.*

Ms. Daniels told the officers that Whitfield has a "full automatic Tech 9" underneath his mattress at his house located at 1855 Sunnydale Avenue.  In addition to describing the gun as a "full automatic Tech 9" Ms. Daniels said the gun was black with a clip on the side. Ms. Daniels stated that Whitfield traded her Cadillac car with a gang member in exchange for the Tech 9. The officers were also informed by Ms. Daniels that Whitfield was on parole and that he should be living at Drake and he shouldn't be out of Marin County, but he's been staying at 1855 Sunnydale with his mom.  *Id.*

Officer Ortiz asked Ms. Daniels if she wanted an ambulance and she declined.  Officer Ortiz then asked Ms. Daniels if she would like him to take her to San Francisco General Hospital and she replied, "no," because she will drive herself to the hospital.  After, Ms. Daniels departed the location, Officer Ortiz conducted two computer checks on Marcus Whitfield from his police vehicle and learned Marcus Whitfield was on felony probation, and as a condition of his probation he has a warrantless search condition.  One of the two computer checks revealed that Whitfield's probation address is listed as 1855 Sunnydale Avenue in San Francisco.  The second computer check conducted by Officer Ortiz, which quéries a different database, revealed that Whitfield was also on Parole and his address listed with Parole is 967 Drake Avenue, Sausalito, CA.  Officer Ortiz learned that Whitfield's  most recent conviction was a felony for which he was sentenced to probation.  *Id.*

Based on Ms. Daniels' statements that Whitfield lives at 1855 Sunnydale in San Francisco, Officers Ortiz and Anderson went to 1855 Sunnydale in an attempt to talk to Whitfield about the reported domestic battery incident.  Upon arriving at 1855 Sunnydale, Jenice Colvin, the defendant's mother answered the door.  The officers informed Jenice Colvin that they were at the house to talk to Marcus regarding a domestic battery.  Jenice Colvin replied, "Marcus doesn't live here," and closed the door.  Id.

1    While Ms. Daniels was being treated at San Francisco General Hospital on April 28,

2  2007, Officer Ortiz obtained an Emergency Order of Protection on behalf of Cavia Daniels based

3  on her earlier statements to him. The Emergency Order of Protection described the domestic

4  battery event and how Whitfield dragged Daniels out of his apartment (referring to 1855

5  Sunnydale). The order also instructed Marcus Whitfield to stay away and move out immediately

6  from Ms. Daniels' residence at 967 Drake Avenue, Marin City and 1133 Brussels, which is Ms.

7  Daniels' mother's home residence. Upon obtaining a copy of the Emergency Order of

8  Protection, Officer Ortiz and Anderson delivered a copy of the order to Ms. Daniels at her

9  mother's residence at 1133 Brussels. *Id.*

10    On April 29, 2007 at approximately 6:00 p.m., Officers Reboli and Kobold, were on duty

11  investigating an individual Officer Reboli believed had a no bail warrant issued against him at

12  the intersection of Sunnydale Avenue and Santos Avenue in San Francisco. Officers Morrow

13  and Anderson responded to the intersection as backup. Upon Officer's Anderson's arrival at the

14  intersection, he recognized an individual who was a reported suspect in a domestic battery

15  incident reported on April 28, 2007. The individual Officer Anderson recognized was the

16  defendant, Marcus Whitfield. *See* Declarations of Officers Reboli and Kobold, attached as

17  Exhibits H and J respectively.

18    Whitfield was placed under arrest approximately two blocks away from 1855 Sunnydale

19  Avenue and then transported to the Ingleside Police Station. A computer check revealed that

20  Whitfield is on felony probation until June 21, 2009 and is subject to a warrantless search

21  condition at his home residence listed as 1855 Sunnydale Avenue. *Id.*

22    After the arrest of Marcus Whitfield, officers conducted a probation search of 1855

23  Sunnydale Avenue at approximately 8:15 p.m.. Present for the probation search were Officers

24  Campos, Reboli, Kobold and Trial. All four officers were dressed in San Francisco Police

25  Department police uniforms. *See* Declarations of Officers Campos, Trail, attached as Exhibits J

26  and K respectively, as well as Officer Ortiz Decl., Exhibit G, Officer Reboli Decl., Exhibit H and

27  Officer Kobold Decl., Exhibit I.

28    Upon approaching the residence, Officers Campos and Reboli went to the front door of

Officers Trial and Kobold went to the back door of the residence. When Officers Campos and Reboli knocked on the front door , they observed a female, later identified as Donecia Colvin, pop her head out of the upstairs window of the residence. Officer Campos asked Ms. Colvin if she could do him a favor and come to the front door and talk to him. Ms. Colvin replied, "yeah, ok." Moments later, Ms. Colvin opened the front door and was standing on the stoop, while Officers Campos and Reboli stood on the front stairs. *See* Officer Reboli Decl., Exhibit H and Officer Campos Decl., Exhibit J.

For approximately 10 minutes, Officer Campos had a conversation with Ms. Colvin regarding the whereabouts of her parents because she looked like a minor who was home alone. Officer Campos asked Ms. Colvin if her mom and dad were at home and Ms. Colvin replied, "no, they're not here," Officer Campos asked Ms. Colvin if there was a way to get a hold of her parents and Ms. Colvin replied, "I can't get a hold of my mom and my dad lives in Hunters Point." Officer Campos asked Ms. Colvin how she gets a hold of her mom and Ms. Colvin replied, "I don't know her phone number." Officer Campos then asked Ms. Colvin if she knows Marcus Whitfield and Ms. Colvin stated, "yeah, he's my brother." Officer Campos asked Ms. Colvin if Marcus Whitfield sleeps at the residence and Ms Colvin replied, "he sleeps in a room upstairs, " and pointed upward with her finger to indicate where he sleeps. *Id.*

Officer Campos informed Ms .Colvin that the reason why he was at the house was because he received information that there might be a gun in the house. Officer Campos then asked Ms. Colvin if she would mind showing him where Marcus sleeps. At this time, Ms. Colvin stated, "Come on I'll show you," and then walked up the stairs leading Officers and Reboli to an upstairs bedroom. *Id.*

Upon entering the bedroom Ms. Colvin said, "this is where he sleeps." Officers Campos and Reboli noticed only one bed in the bedroom. Officer Campos then asked Ms. Colvin if she could do him a favor and pick up the mattress. Ms. Colvin replied, "Oh, ok," and lifted up the mattress. When Ms. Colvin lifted up the mattress the Officers observed a firearm and a loaded magazine laying next to the firearm underneath the mattress. The firearm was later determined to be an Intratec Tec-9 9 mm submachine gun. Ms. Colvin acted surprised to the see gun and said,

"Oh my God, Oh my God." *Id.*

Officers observed that a majority of the clothes in the bedroom were adult male clothing. There was also bottles of Hennessy, an alcoholic beverage, in the room with adult males shoes. On the bedroom dresser was mens cologne with a picture of Marcus Whitfield and other adult males. There was also gang signs on dresser mirror. *See* Officer Reboli Decl., Exhibit H, Officer Kobold Decl., Exhibit I, Officer Campos Decl., Exhibit J and Officer Trail Decl., Exhibit K.

After the firearm and loaded magazine were discovered, Officer Campos asked Ms. Colvin who stays in the bedroom where the firearm was found and she replied, "Marcus and my 11 year old brother stay there." At that time, Ms. Colvin gave officers contact information for her father Duane Colvin, who was contacted by officers and informed of what was occurring in the residence and that Ms. Colvin was home alone. Officers picked up Duane Colvin from his residence and brought him to 1855 Sunnydale Avenue to be with his daughter. Duane Colvin provided officers with Ms. Colvin's mother's telephone number. Officers made multiple attempts to contact Ms. Colvin's mother and on the third attempt, Officers were successful and informed the mother what was occurring at the residence and how Ms. Colvin was home alone. Ms. Colvin's mother hung up on officers. The officers were inside 1855 Sunnydale for approximately 30 minutes. Officers stated that Ms. Colvin was helpful and cooperative. Officers also stated that Ms. Colvin was not upset and she understood everything that was occurring. *Id.*

After the probation search was conducted, Officers Reboli and Kobold booked Marcus Whitfield at the Ingleside police station. *See* Officer Reboli Decl., Exhibit H and Officer Kobold Decl., Exhibit I. While being booked, Whitfield told Officers Reboli and Kobold that his home address is 943 Drake Avenue, Sausalito, CA. *See* Incident Report of Officer Kobold, attached as Exhibit L. On this same day, a fingerprint expert lifted a latent fingerprint from the ammunition magazine and compared it to the known fingerprints of Marcus Whitfield. The fingerprint expert determined that the latent fingerprint lifted from the ammunition magazine matched Marcus Whitfield's fingerprints. *See* Report of Investigation of Officer Kobold, attached as Exhibit M.

On May 2, 2007, Cavia Daniels was interviewed by Officer Knoble. During this

interview, which was tape recorded, Ms. Daniels explained that Whitfield had been living with her in Marin, but that he often stays at his mother's house located at 1855 Sunnydale Avenue. Ms. Daniels stated that in the last month she has slept at 1855 Sunnydale Avenue with Whitfield approximately four times. Ms. Daniels stated she felt responsible for Whitfield being arrested for possession of the gun because she told officers that Whitfield owned a gun. Ms. Daniels stated that Whitfield frequently spends the night at his mom's house because his mom is a "coke addict" and Whitfield has a 10 year old brother and a 14 year old sister. Ms. Daniels related that Whitfield's mom goes missing for days at a time and as a result sometimes Whitfield's brother and sister will come to her house or she will go to 1855 Sunnydale Avenue to spend the night. *See* Supplemental Report of Officer Kobold, attached as Exhibit N.

Ms. Daniels also stated during the interview that while in Marin she had been a recent victim of an attempted rape and she asked Whitfield to get a gun for protection. Ms. Daniels stated that Whitfield then made arrangements to sell her Cadillac car that she owned to someone in the Sunnydale Housing Development in exchange for the Tech-9. Ms. Daniels stated that Whitfield has had possession of the Tech-9 for about one week and his intent was to bring the gun to her residence in Marin. Ms. Daniels stated that the gun magazine holds around 30 bullets. Officer Knoble asked Ms. Daniels if Whitfield had ever fired the gun and whether he knew it even worked because there was 12 bullets in the magazine. Ms. Daniels told the officer "of course you have to test something before you buy it." *Id.*

## IV. LEGAL ANALYSIS

### A. The Defendant Has Not Demonstrated a Reasonable Expectation of Privacy with Respect to 1855 Sunnydale Avenue

In order to assert a Fourth Amendment violation, the defendant must first meet his "burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128 at 130 n.1 (1978). An individual's "capacity to claim the protection of the Fourth Amendment depends...upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (internal quotation omitted). Whether a search is

1 reasonable "is determined by assessing, on the one hand, the degree to which it intrudes upon an
2 individual's privacy and, on the other, the degree to which it is needed for the promotion of
3 legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118-119 (2001)
4 (internal quotation marks omitted).

5 On June 1, 2006, in the San Francisco County Superior Court, the defendant pled guilty
6 to Possession of Controlled Substance for Sale or Purchase, a felony under Section 11351 of the
7 California Health and Safety Code. The defendant was placed on formal probation with the
8 Adult Probation Department for a period of three years. On June 1, 2006, not only did the Judge
9 read the probation search condition to the defendant, but on June 22, 2006, as part of his
10 sentence, it was written that the "Defendant is subject to a warrantless search condition, as to
11 defendant's person, property, premises and vehicle, any time of the day or night, with or without
12 probable cause, by any peace, parole, or probationer officer." *See* Reporter's Transcript of
13 Proceedings, attached as Exhibit B and Minutes from the Superior Court of California, attached
14 as Exhibit D. Also on June 22, 2006, Marcus Whitfield officially reported to Probation officer,
15 Kari Segali, that his home residence is 1855 Sunnydale Avenue, San Francisco, CA. *See*
16 Probation Officer Fitzpatrick Decl., Exhibit E.

17 The defendant is therefore a probationer and "inherent in the very nature of probation is
18 that probationers do not enjoy the absolute liberty to which every citizen is entitled." *United*
19 *States v. Knights,* 534 U.S. 112, 119 (2001). Inherent in authorized supervision is a diminution
20 of the probationer's right to privacy. *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987). In *Knights*,
21 the Supreme Court considered the facts that Knights' probation order clearly set out the
22 probation search condition, and that Knights was clearly informed of the condition. *United States*
23 *v. Knights*, 534 U.S. 112, 119 (2001). The Court concluded, that under these circumstances,
24 Knights' expectation of privacy was significantly diminished. *Id.,* at 119-120.

25 In this case, as in *Knights*, the defendant's probation order clearly set out the probation
26 search condition, and the defendant was clearly informed of the condition at the time he pled
27 guilty to the felony violation; therefore, the defendant's expectation of privacy as a probationer is
28 diminished and he has no legal standing for requesting that the firearm and ammunition found in

United States' Opposition to Defendant's Motion to Suppress Evidence
CR 07 0366 VRW                                    9

his residence bedroom at 1855 Sunnydale Avenue be suppressed by this Court.

**B.     The Search of 1855 Sunnydale Avenue Was a Valid Probation Search**

On April 29, 2007, officers had probable cause to believe the defendant lived at 1855 Sunnydale because this address was on file with the Adult Probation Department as being the defendant's home residence.  However, the defendant asserts that the police did not have probable cause to believe that the 1855 Sunnydale address was his residence, because the police had ample evidence that the defendant had moved into his girlfriend's home at 967 Drake Avenue in Marin City.  In making this assertion, the defendant improperly relies on *United States v. Howard*, 447 F. 3d 1257 (9th cir. 2006) for the proposition that the court should examine several factors to determine whether the police had probable cause to believe the defendant resided at the location they searched.

The central problem with relying on *Howard* is that in that case, as in the other cases cited in *Howard, United States v. Dally,* 606 F. 2d 861, 863 (9th Cir. 1979); *United States v. Watts*, 67 F. 3d 790, 795 (9th Cir. 1995); *United States v. Conway*, 122 F. 3d 841 (9th Cir. 1997), the police were searching a residence different from the address the defendant reported to his probation officer.  In the situation where the police search a residence different from a address the defendant reported to his probation officer, the Court requires an inquiry into whether the police had probable cause to believe that the home that they searched was the residence of the defendant.  *United States v. Howard*, 447 F. 3d 1257, 1265-66 (9th Cir, 2006).   This case however is dramatically different because the police officers searched a home that the defendant listed as his residence with the Probation Department; therefore, it is not required that this Court inquire as to whether or not police officers had probable cause.  In *Howard*, the Court goes out of its way to point out that such a case falls in a separate category. *Howard*, 447 F. 3d at 1265 n. 10 ("We do not consider *Motley* in this analysis, because in that case the police were searching the residence that Motley had most recently reported as his own").

Despite the Court's holding in *Howard*, the defense nevertheless asserts four reasons why the officers "should have known" the defendant moved to 967 Drake Avenue.  Although such an

I
inquiry is not required, the government contests the defendant's arguments as described below. First, the defense alleges on April 29, 2007, after the defendant was arrested, he told officers he lived on "Drake Avenue," which is stated in the Incident Report by Officer Kobold. However, what the defense has failed to point out to the Court, which is of great significance, is that the defendant's address, stated in the Incident Report, is "943 Drake Ave" in Sausalito, CA. More importantly, the defendant gave the address of 943 Drake Avenue after the probation search was conducted.

The police report does not vouch for the veracity of the defendant's statement. Just because the defendant told police officers he lives at 943 Drake Avenue doesn't mean he lives there. In fact, the Declaration of the defendant's Parole Officer Steve Parker, attached as Exhibit A, shows that 943 Drake Avenue in Sausalito is a home address the defendant had reported to the Parole Board of the Division of Juvenile Justice on November 8, 2006 upon his release from custody. Id. The 943 Drake Avenue address was the defendant's home address on file with the defendant's Parole Department until April 9, 2007. On April 9, 2007, the defendant's Parole Officer, Steve Parker, went to 943 Drake Avenue in Sausalito for a home visit and discovered the defendant no longer lived at that this location. Steve Parker called the defendant on his cell phone and asked why the defendant did not inform him that he had moved and the defendant replied, "Oh, I thought I told you that I moved to 967 Drake." *Id.*

The second reason the defense alleges for why the officers "should have known" the defendant moved, is because the Emergency Protection Order dated April 28, 2007, directed the defendant to "move out" of 967 Drake Avenue. *See* Emergency Order of Protection, attached as Exhibit O. However, this statement is not enough to invalidate probable cause because the Emergency Protection Order also contains the statement of Cavia Daniels that the defendant "dragged her out of his apartment," referring to the house at 1855 Sunnydale Avenue. *Id.*

The third reason the defense alleges for why the officers "should have known" the defendant moved from 1855 Sunnydale is because the officers asked Donecia Colvin if the defendant "stays or lives" at the residence. The officers actually asked Donecia Colvin if the defendant "sleeps" at the residence in which Ms. Colvin replied, "he sleeps in a room upstairs."

*See* Declarations of Officers Campos and Reboli, attached as Exhibits J and H . The fact that Ms. Colvin stated that the defendant sleeps in a room upstairs only adds to the probable cause the officers had already obtained. However, the phrasing of "stays, lives or sleeps" at the residence is irrelevant because the officers already had probable cause showing the defendant lived at 1855 Sunnydale, because a criminal history check stated the defendant was on felony probation and subject to a warrantless search condition at his home residence listed as 1855 Sunnydale.

The final reason the defense contends the officers "should have known" the defendant had moved from 1855 Sunnydale is because Cavia Daniels told officers that the defendant lives with her at 964 Drake Avenue. However, the government's evidence shows that Cavia Daniels' statements to the officers on April 28, 2007, only bolstered the probable cause the officers already possessed. Cavia Daniels told officers that she had just been involved in a physical altercation with the defendant who has a firearm underneath his mattress at his house located at 1855 Sunnydale Avenue. Ms. Daniels described the gun to police officers as a "full automatic Tech 9," black gun with a clip on the side. *See* Officer Ortiz Decl., attached as Exhibit G. Ms. Daniels told officers that sometimes the defendant stays at 1855 Sunnydale Avenue and sometimes he stays with her at 967 Drake Avenue in Marin City. *Id.* Ms. Daniels stated the defendant is on parole and he should be living at Drake, and she also indicated that the defendant shouldn't be out of Marin County, but he has been staying at 1855 Sunnydale with his mom. *Id.* Such specific and descriptive statements made by Ms. Colvin to police officers only added to the probable cause the police officers already possessed regarding the fact that the defendant lived at 1855 Sunnydale.

The defendant being a probationer, is required to report a change of his address to his Probation Officer. *See* Declaration of Probation Officer Steve Fitzpatrick, attached as Exhibit E. The reason the burden is the defendant to notify the court system of a change of address is to avoid this situation of a defendant trying to get out of a valid warrantless search condition by systematically lying to and manipulating his Probation Officer, Parole Officer, police officers and the Court regarding his home residence. The defense's argument that the officers "should have known" the defendant allegedly moved is enabling the defendant to use his failure to comply

with this reporting requirement to help him break the law. As the Court in *Knights* stated, "probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply." *United States v. Knights*, 534 U.S. 112, 120 (2001).

However, even assuming that Cavia Daniels' only statement to the officers was that the defendant lives at 967 Drake Avenue, the defense's contention that this statement along with the addresses on the Emergency Protection Order and the Incident Report, and the "stay or lives" terminology are enough to invalidate the probable cause the officers had already obtained is without support and, in fact, is directly controverted by the Ninth Circuit's holding in *Motley v. Parks*, 432 F.3d 1072, 1082 (9th Cir. 2005).

In fact, *Motley* is particularly on point for the case at bar. In *Motley* officers searched Motley's home pursuant to the parole conditions of her ex-boyfriend, Juan Jamerson. Over one month prior to the search, but unbeknownst to the officers, Jamerson had been taken back into custody as a result of a parole violation. *Id.* at 1075. When the officers arrived at Motley's residence, they falsely told Motley that Jamerson's parole officer was present, and that they had a search warrant. *Id.* at 1076. Although Motley told the officers that Jamerson was in custody, they threatened that if she did not let them in, she would be arrested and her infant son would be put in foster care. *Id.* The officers then entered and searched the house with guns drawn. *Id.*

The Court in *Motley* concluded "that because the officers had probable cause to believe that they were at Jamerson's residence, they were entitled to maintain that belief until 'presented with convincing evidence that the information they had relied upon was incorrect.' (Citing *Moore v. Vega*, 371 F.3d 110, 118 (2d Cir. 2004)). Applying these principles, the Court in *Motley* found that the officers had sufficient probable cause, as they had received information from the LAPD regarding Jamerson's last known address and parole status, and that their reliance on such information was objectively reasonable regardless of whether the information was erroneous. *Motley v. Parks*, 432 F. 3d 1072, 1081 (9th Cir. 2001). The Ninth Circuit has held that there is no

"constitutional difference between probation and parole for purposes of the Fourth Amendment." *United States v. Harper*, 928 F. 2d 894, 896 n. 1 (9th Cir. 1991).

Therefore, in this case, as in *Motley*, when the officers obtained the defendant's criminal history which showed he was on felony probation and subject to a warrantless search condition at his home residence of 1855 Sunnydale Avenue, they had probable cause to believe that the defendant was living at 1855 Sunnydale Avenue at the time of the search. As explained above, there was no convincing evidence that the information the officers relied upon was incorrect. Also, the officers in this case did not threaten to arrest Donecia Colvin and nor were their guns drawn as were the facts in *Motley*.

This contention is further supported by the Courts analysis of *Motley* in *Howard*. There the Court affirms its ruling in *Motley* saying that there was probable cause that the girlfriend's house was the Parolee's residence despite the fact that "[E]verything was in [the girlfriend's] name and she paid the rent and all the bills associated with the apartment, however, her address was the most recent address the parolee has reported to his parole officer... We affirmed the district court, holding that the officers were entitled to rely on their knowledge of the parolee's most recent address, as reported by the parolee to his parole officer." *Howard*, 447 F. 3d at 1264-5 (internal quotations omitted). Therefore, in this case, as in *Motley*, the officers are entitled to rely on their knowledge of the defendant's most recent address at 1855 Sunnydale Avenue, as reported by the defendant to his Probation Officer.

While the defendant in his motion correctly cites *Howard* as saying that a statement that a parolee does not reside at his reported address is against his interest and therefore should be accorded some weight, the defendant fails to note the Court's statement in the following footnote:

"By the same logic, the denial by a parolee or his co-resident that the parolee lives at an unreported address is not necessarily entitled to credibility because it is frequently tinged with self-interest. We have therefore accorded little import to such denials in our case law." *See, e.g., Motley*, 432 F. 3d at 1082 ("[The co-resident's] statement that [the parolee] did not live at the address, coming from a less-than-disinterested source, did not undermine the information the

officers previously had received...") *Dally,* 606 F. 2d at 862, 863." *Howard,* 447 F. 3d at 1266 n. 13. In this case, Cavia Daniels and Donecia Colvin's Declarations in which they stated the defendant lives at 964 Drake Avenue are in a similar category of self-interested statements since they want to protect the defendant who was clearly in violation of the terms of his probation by possessing a firearm and ammunition. Therefore, the same logic used in *Motley* should apply in this case, and these less-than-disinterested" statements, made by Ms. Colvin and Ms. Daniels as to where the defendant lived, should be given little weight, because these statements do not undermine the probable cause police officers already possessed.

### C. Third Party Consent Is Not Required Where Officers Established Probable Cause to Believe the Defendant Lived at 1855 Sunnydale Avenue

The defense alleges that in addition to probable cause, the officers were also required to have the consent of a third party resident in order to validate the probation search at 1855 Sunnydale. By asserting this argument, the defense is overlooking the Ninth Circuit's finding in *Motley* that when a police officer possess the requisite probable cause to believe that a defendant lives at the residence at the time of the search, consent of a third party resident is not required where such probable cause is established. *Motley v. Parks*, 432 F. 3d 1072, 1079 (2005).

Specifically, the Ninth Circuit held in *Motley* that "a search conducted without consent or a search warrant is permissible only when the officers have some heightened knowledge that they are at the address where...the parolee...resides." *Id.* at 1029. Therefore, in order to protect the rights of third party residents, "before conducting a warrantless search pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched." *Id* at 1080.

Although the facts of this case reflect that the officers had the consent of Donecia Colvin to enter the residence, the consent of Ms. Colvin was not required for the officers to conduct the probation search. As presented above, the officers possessed the requisite probable cause to believe that the defendant lived at 1855 Sunnydale Avenue at the time of the search, and consent of a third party resident was not required because probable cause was established. In addition, the officers already had consent to search 1855 Sunnydale Avenue before even arriving at the

1  residence, because the defendant consented to the search of the residence when he agreed to the

2  terms of his probation and officially reported the 1855 Sunnydale Avenue address to the

3  Probation Department as his home address.

**D.    Officers Had Reasonable Suspicion of Wrong Doing**

5  The probation search of 1855 Sunnydale Avenue is supported by at least reasonable

6  suspicion, and arguably probable cause.  On April 28, 2007, Cavia Daniels flagged down police

7  officers as they were driving down Sunnydale Avenue that she was involved in a physical

8  altercation with Marcus Whitfield, her boyfriend.  Ms. Daniels described how the defendant

9  dragged her out of the house, grabbed her by her head and threw her to the ground.  Ms. Daniels

10  stated to officers that she was afraid of Marcus Whitfield.  Ms. Daniels also told officers that

11  Whitfield had a firearm underneath his mattress his house located at 1855 Sunnydale Avenue.

12  Ms. Daniels stated she has seen the gun and described the gun as a "full automatic Tech 9,"

13  which is black and has a long clip on the side of the gun.  Ms. Daniels informed the officers that

14  Marcus Whitfield traded her Cadillac car with a gang member in exchange for the Tech 9.

15  Ms. Daniels also stated to the officers that Marcus Whitfield is on parole and he should be living

16  at Drake and he shouldn't be out of Marin County, but he's been staying at 1855 Sunnydale with

17  his mom. *See* Declaration of Officer Ortiz, attached as Exhibit G and Supplemental Report of

18  Officer Kobold, attached as Exhibit N.  Officers therefore had reason to suspect that the

19  defendant possessed a firearm at 1855 Sunnydale in violation of state and federal law prohibiting

20  a felon from possessing a firearm.

21  The defendant cites *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) for the holding

22  that in order to enter the probationer's home, the police must possess probable cause to believe

23  that the home to be searched is the probationer's residence.  In that case, the search of

24  probationer violated the Fourth Amendment because the officers knew nothing more than the

25  "names and last known addresses of the parolees" and had no reason to "susp[ect] that [the

26  target] was involved in criminal activity" when they searched his home. *Id.*  Here, on the other

27  hand, the police were following up on clear evidence of criminal activity directly linked to the

28  defendant, and had uncovered a number of facts suggesting that the defendant possessed a

firearm at an address he had reported to his Probation Officer. Such facts amount to far more than simply knowledge of the defendant's name and last known address. *See Motley*, 383. F. 3d at 1068.

Of far more relevance is the landmark Supreme court case of *Griffin v. Wisconsin*, 483 U.S. 868 (1987). As that Court held. "because it is the very assumption of the institution of probation that the probationer is in need of rehabilitation and is more likely than the ordinary citizen to violate the law, we think it enough if the information provided indicates, as it did here, only the likelihood...of facts justifying the search." *Id.* at 880. In that case, the Court upheld the warrantless search of a probationer based on a tip from the police saying nothing more than that the suspect '"had or might have guns,"' in combination with the authorities' "entire experience with the probationer, ...in the light of [their] knowledge of his life, character, and circumstances." *Id.* At 879-80. Here, as discussed above, the facts suggesting criminal activity by the defendant were far more substantial than those in *Griffin,* where the police relied on a tip that a suspect might have a gun.

The Court in *Knights* held that search of a probationer satisfies constitutional standards when there is "enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *United States v. Knights*, 534 U.S. 112, 121 (2001). In other words, a probationer may be searched without a warrant, and upon the lower threshold of reasonable suspicion requiring only "specific and articulable facts which, taken together with rational inferences from those facts, reasonable warrant intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted. "[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Scott v. United States*, 436 U.S. 128, 137 (1978). In this case, Cavia Daniels relayed specific and articulable facts to officers by describing the gun in detail, informing officers where the gun was located and how the defendant obtained the firearm. Therefore, there was reasonable suspicion that the firearm Ms. Daniels described was owned, possessed and

controlled by the defendant.

Hence, the probation search was justified because, first, the officers had probable cause to believe that the defendant, who was on probation, was living at 1855 Sunnydale; and second, it was clearly established that a particularized suspicion of wrong doing on the defendant's part was established.

**E.  Police Officers May Search Both 1855 Sunnydale and 964 Drake Avenue**

In light of the Supreme Court's holding in *United States v. Knights* and the Ninth Circuit's holding in *Motley v. Parks*, since the defendant reported two different addresses to his Probation Officer and Parole Agent, officers may conduct warrantless searches of both 1855 Sunnydale Avenue and 964 Drake Avenue.

### V.  CONCLUSION

The defendant's Motion to Suppress Evidence fails to establish a basis to challenge the search of 1855 Sunnydale Avenue, so the defendant cannot claim the protection of the Fourth Amendment.  Even if he could, officers had probable cause to believe that his home address, on file with the Probation Department, was 1855 Sunnydale Avenue.   In light of the fact that officers possessed the requisite probable cause to believe the defendant lived at 1855 Sunnydale, third party consent was not required to conduct the probation search and the search was supported by reasonable suspicion that the defendant was violating state and federal laws by possessing a firearm.  For these reasons, the Court should deny the defendant's Motion to Suppress Evidence in its entirety.

DATED: August 7, 2007                     Respectfully submitted,


                                          SCOTT N. SCHOOLS
                                          United States Attorney


                                          *Tamara Weber*
                                          TAMARA WEBER
                                          Special Assistant United States Attorney