1  BARRY J. PORTMAN
   Federal Public Defender
2  GEOFFREY HANSEN
   Chief Assistant Federal Public Defender
3  450 Golden Gate Avenue
   San Francisco, CA  94102
4  Telephone:  (415) 436-7700

5  Counsel for MARCUS WHITFIELD

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          )    No. CR 07-00366 VRW
                                       )
12           Plaintiff,                )    **DEFENDANT'S REPLY IN**
                                       )    **SUPPORT OF MOTION TO**
             v.                        )    **SUPPRESS EVIDENCE**
13                                     )
    MARCUS WHITFIELD,                  )
14                                     )    Date: August 28, 2007
             Defendant.               )    Time: 10:30 a.m.
15  _____)        Honorable Vaughn R. Walker

16

17          Mr. Whitfield submits this Reply in response to the government's Opposition to his Motion

    to Suppress all evidence obtained as a result of the search of 1855 Sunnyvale Street, San Francisco.
18

19  **I.      The government's "reasonable expectation of privacy" analysis is flawed**.

20          In its opposition to defendant's motion to suppress, the government appears to misunderstand

    the meaning of the "legitimate expectation of privacy" as articulated by the Supreme Court in *Rakas*
21
    *v. Illinois*, 439 U.S. 128, 143 (1978).  The government argues that the defendant did not possess a
22
    reasonable expectation of privacy in the premises at 1855 Sunnydale because he was a probationer,
23
    and therefore his expectation of privacy was diminished.  *See* Opp. at 8-9.  While this reasoning may
24
    explain the justification for warrantless probation searches in general, it does not explain defendant's
25
    alleged inability to contest the search at 1855 Sunnydale.
26

1  The *Rakas* court was addressing a concept formerly known in the Fourth Amendment context

2  as "standing" – whether or not a defendant had the right to contest the legality of a search or seizure.

3  *Id.* at 129-30. The question turned on whether or not defendant's own Fourth Amendment rights

4  were violated by the challenged search and seizure. *Id.* at 130 n.1.

5  Defendant's status as a probationer is irrelevant to the "legitimate expectation of privacy"

6  analysis. True, that status may have created a search condition for defendant's person and residence,

7  but it did not destroy defendant's ability to assert that he has a legitimate expectation of privacy in a

8  particular location. The distinction is particularly important here, where defendant alleges that his

9  probation search condition did not apply to the premises searched, but that he did have a legitimate

10  expectation of privacy in those premises sufficient to contest the legality of the search and seizure.

11  While the issues of defendant's probationer status and his legitimate expectation of privacy

12  may overlap in this case, they are separate legal concepts and should be analyzed separately.

13  As argued in defendant's motion, the defendant did have a legitimate expectation of privacy

14  in the premises at 1855 Sunnydale. The Supreme Court expressly held that overnight guests possess

15  a legitimate expectation of privacy in their temporary lodging, and therefore have standing to contest

16  an unlawful search or seizure at that location. *Minnesota v. Olson*, 495 U.S. 91, 96-101 (1990). As

17  an overnight guest at 1855 Sunnydale, the defendant had a reasonable expectation of privacy in the

18  premises and may contest the unlawful search and seizure of the premises.

19  **II.    The search of 1855 Sunnydale was not a valid probation search.**

20  **A.    Application of *United States v. Howard***

21  In its opposition, the government claims that defendant has mistakenly relied in support of his

22  position on *United States v. Howard*, 447 F.3d 1257 (9th Cir. 2006). The government claims that

23  *Howard* only applies if the police are searching a residence different from the address the defendant

24  reported to his probation officer. Opp. at 10. And since, the government contends, the defendant has

25  a search condition at both 1855 Sunnydale and 964 Drake, *Howard* is inapplicable here.

26  The government's reading of *Howard* is unconvincing. *Howard* takes its holding from

1  another Ninth Circuit case, *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) (en banc).  In

2  *Motley*, a case the government concedes is on point, the police searched the address that the

3  defendant had last reported to his parole officer.  *Id.* at 1080-81.  The *Howard* court, directly quoting

4  *Motley*, wrote: "[B]efore conducting a warrantless search pursuant to a parolee's parole condition,

5  law enforcement officers must have probable cause to believe that the parolee is a resident of the

6  house to be searched."  *Howard*, 447 F.3d at 1262, *quoting Motley*, 432 F.3d at 1080.  The

7  distinction latched onto by the government is not supported by a reading of the two cases.

8  Accordingly, even pursuant to a valid probation search condition, officers must have probable cause

9  to believe that the location to be searched is the residence of the probationer/parolee.  *See Howard*,

10  447 F.3d at 1262*, Motley*, 432 F.3d at 1080.

11      The language of defendant's probation and parole conditions lends further support to his

12  reading of the *Howard* and *Motley* cases.  At the hearing at which defendant was sentenced to

13  probation, the court stated: "[Defendant] must submit his person, *residence* and vehicle and property

14  to a search by any peace officer or probation officer . . . ."  *See* Gov. Ex. B at 4.[1]  Nowhere in the

15  transcript or the accompanying court minutes does it dictate the address of the residence to which it

16  refers.  *See id*; *see also*, Gov. Ex. C & D.  Similarly, defendant's parole condition read as follows:

17  "You and your residence and any property under your control may be searched without a warrant by

18  a parole agent of the Department of the Youth Authority, parole agent of the Youthful Offender

19  Parole Board or any peace officer."  *See* Gov. Ex. A at 3.  Neither condition is tied to a particular

20  address, as the government seems to assert.  Rather, the logical interpretation of these conditions is

21  that the place of defendant's residence must be determined at the time the search is conducted.

22  Pursuant to *Howard* and *Motley*, this determination must be based on probable cause.

23      These underlying facts mirror those of the *Howard* case.  There, the court explained:

24          As a condition of his supervised release, Howard consented to the 'warrantless search
            of his residence, person, property, and automobile' at any time. Officer Aquino and

25

26  _____

[1]All citations to exhibits refer either to the Government's exhibits filed in opposition to the defendant's motion
("Gov. Ex.") or to defendant's exhibits filed in support of the original motion ("Def. Ex.").

1    the other officers who searched the West Bonanza residence relied on this clause for
     the authority to search the residence; they did not have a search warrant, nor were
2    there exigent circumstances. However, by its own clear and explicit language, the
     search clause only applies if the West Bonanza apartment was Howard's residence.

3
     *Id.* at 1262. Likewise, here, before conducting a probation or parole search, officers needed probable
4
     cause to believe that 1855 Sunnydale was defendant's residence.
5
             **B.     There was insufficient probable cause to believe that defendant resided at 1855**
6                    **Sunnydale**.

7            The fundamental question in this case is whether the officers had probable cause to believe

8    that the defendant resided at 1855 Sunnydale. The government asserts that since this was the address

9    defendant most recently gave to his probation officer and that appeared on a computer records check,

10   probable cause existed. *See* Opn. at 10, 18, Gov. Ex. E.

11           To support its position, the government attempts to play down that the officers conducting the

12   search had the following fresh, reliable and contradictory information:

13   (1)     Cavia Daniels told police on April 28, 2007 that she and defendant lived together at 967
             Drake Ave. in Marin City. *See* Def. Ex. A at 1.
14
     (2)     Cavia Daniels also told police on April 28, 2007 that defendant "kept a gun under a mattress
15           in his bedroom *at his parent's house* located at 855 Sunnydale Ave. SF *where he sometimes
             stayed*." See Gov. Ex. M (emphasis added).
16
     (3)     On April 28, 2007, an officer issued an emergency protective order to defendant's girlfriend,
17           Cavia Daniels. That order required defendant to "move out immediately from 967 Drake
             Ave, Marin City." *See* Gov. Ex. O.
18
     (4)     One computer check on defendant run by Officer Ortiz on April 28, 2007 returned an address
19           of 967 Drave Avenue, Sausalito. See Gov. Ex. G.

20   (5)     On April 28, 2007, Officers Ortiz and Anderson went to 1855 Sunnydale to look for the
             defendant. Defendant's mother answered the door and told the officers, "Marcus doesn't live
21           here." See Gov. Ex. G.

22   (6)     On April 29, 2007, Officers Reboli asked defendant's sister if defendant "stays or lives at the
             residence [at 1855 Sunnydale]." She answered, "yeah, he stays here." See Def. Ex. C at 4.[2]
23   (7)     On April 9, 2007, defendant reported to his Parole Agent that he resided at 967 Drake
             Avenue, Sausalito. *See* Gov. Ex. A.
24

25           [2] In its opposition, the government argues that Officer Reboli actually asked Donecia Colvin "if the defendant
     'sleeps' at the residence in which Ms. Colvin replied, 'he sleeps in the room upstairs." Opp. at 11. It cites the
26   declarations of Officers Campos and Reboli in support. *See* Gov. Ex H & J. It is unclear how the government reconciles
     these officers recollection with the incident report of Officer Kobold, prepared the day after the search. *See* Def. Ex. C.

This evidence suggests that at the time of the search, defendant resided at 967 Drake Avenue in Marin County and merely stayed occasionally at 1855 Sunnydale in San Francisco.  As the Ninth Circuit stated in *Howard*: "We have applied a relatively stringent standard in determining what constitutes probable cause that a residence belongs to a person on supervised release. *It is insufficient to show that the parolee may have spent the night there occasionally.*  Instead, the facts known to the officers at the time of the search must have been sufficient to support a belief, in 'a man of reasonable caution,' that Howard lived at [the searched address]. *Howard*, 447 F.3d at 1262, *quoting Texas v. Brown*, 460 U.S. 730 (1983).

However, in an effort to minimize the weight of this evidence, the government attempts to paint Ms. Daniels and Ms. Colvin as untrustworthy:

> Cavia Daniels and Donecia Colvin's Declarations in which they stated the defendant lives at 964 [sic] Avenue are in a similar category of self-interested statements since they want to protect the defendant who was clearly in violation of the terms of his probation by possessing a firearm in ammunition.  Therefore, the same logic used in *Motley* shoud apply in this case, and these 'less-than-dissinterested' statements, made by Ms. Colvin and Ms. Daniels as to where the defendant lived, should be given little weight because these statements do not undermine the probable cause police officers already possessed.

Opp. at 15.

The comparison to *Motley* and *Howard* on this point is inapposite.  In *Motley*, the parolee's girlfriend told officers that he did not live at the unreported address they sought to search. *Motley*, 432 F.3d at 1076.  This statement appeared self-serving to the court likely because it was this girlfriend (Motley, herself) that was bringing the present § 1983 charges against officers for the illegal search. *Id.* 1075-77.  Not, as the government implies here, because she had an interest in keeping her boyfriend out of trouble.  Likewise, in *Howard*, the court points out that defendant's girlfriend had a motive to lie, not simply to keep her boyfriend out of trouble, but because their living arrangement would have violated her conditions of parole as well. *Howard*, 447 F.3d at 1266 n.13.

The statements of defendant's girlfriend, sister and mother in the present case are different.  All three made statements to police *prior* to the search taking place – prior to any awareness that

their boyfriend/brother/son would be facing charges of felon in possession of a firearm.  In fact, at the time the statements were made, they were completely against interest – the statements incriminated the defendant for not living at the address he had reported to probation.

Moreover, before attacking defendant's family members as untrustworthy, the government should scrutinize the contents of the officers' declarations submitted with its opposition in comparison to police reports created at or near the time of the incident.  Both Officers Ortiz and Reboli declare under penalty of perjury in documents created for the sole purpose of opposing defendant's motion that Ms. Daniels told them on April 28 that the defendant lived at 1855 Sunnydale in San Francisco.  *See* Gov. Ex. G at 3, Gov. Ex. H at 2.  However, this information contradicts two other reports by police officers taken near the time of the incident.  On May 2, 2007, Inspector Knoble wrote: "Daniels said that Marcus currently lives with her on Drake Ave, but that she drives Marcus over to San Francisco everyday to go to his program Daniels said that after Marcus attends the program he always goes over to his moms house located on Sunnydale.  Daniels further explained that Marcus will *often stay over at his mom's house and look after his brother and sister*."  *See* Gov. Ex. N (emphasis added).  Likewise, on June 1, 2007, Officer Kelly wrote "Daniels told police that Whitfield kept a gun under a mattress in his bedroom at his parent's house located at 855 Sunnydale Ave. SF *where he sometimes stayed*."  *See* Gov. Ex. M at 1 (emphasis added).  These statements, as well as Ms. Daniels' declaration, directly contradict the statements attributed to her by Officers Ortiz and Reboli in their declarations.

### C.   Even if probable cause that defendant resided at 1855 Sunnydale did exist, that probable cause dissipated by the time of the search.

If probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity.  'As a corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.'

*United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005), *quoting Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988); *see also, United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir.

1   2007) ("In such cases, execution of the arrest or continuation of the arrest is illegal.").

2           In the present case, even if officers had probable cause to believe that defendant lived at 1855

3   Sunnydale based on the most recent address he reported to probation, that probable cause dissipated

4   as soon as the officers learned the more recent information.

5           The defendant's probation officer declares that the last time he met with defendant, on March

6   13, 2007, defendant stated that his home address of 1855 Sunnydale remained the same. Gov. Ex. E

7   at 3.[3]  In contrast, defendant's parole officer declares that defendant provided him the new address of

8   967 Drake as recently as April 9, 2007.  *See* Gov. Ex. A at 4.  Likewise, in the days prior to the

9   search, defendant, his girlfriend, his mom and his sister all told officers that defendant did not reside

10  at 855 Sunnydale – at most, they confirmed that he "stayed there" occasionally.

11          All of this information should have cast doubt on the officers' alleged belief that defendant

12  resided at 1855 Sunnydale.  Accordingly, any probable cause to believe that defendant resided there

13  dissipated prior to the time the search was conducted.

14          **D.      Mr. Whitfield cannot be subject to warrantless searches at both 1855 Sunnydale
                 and 964 Drake Avenue**

15          The government's position that defendant is subject to warrantless probation/parole search

16  conditions at both 1855 Sunnydale and 967 Drake because both of those addresses are on file with

17  various offices defies common sense.  As noted above, defendant's probation conditions required

18  that "he must submit his person, residence and vehicle and property to a search by any peach officer

19  or probation officer, at any time or day or night, with or without his consent, with or without a

20  warrant, and with or without reasonable or probable cause."  *See* Gov.'s Ex. B.  Likewise,

21  defendant's parole search condition reads: "You and your residence and any property under your

22  control may be searched without a warrant by a parole agent of the Department of the Youth

23  Authority, parole agent of the Youthful Offender Parole Board or any peace officer."  *See* Gov. Ex.

24

25          [3] The declaration reports that defendant left a voice message for his probation officer as late as April 23, 2007.
26  However, the most the probation officer can say for those instances is that "in none of those voice messages did
    [defendant] report a change of address for his home residence."  *See* Gov. Ex. E at 3.  The last affirmative response from
    defendant on this point was March 13.  *Id.*

Reply in Supp. of Mot. to Suppress

A. These conditions do not contemplate more than one residence. Rather, defendant's situation here is precisely like that of the defendant in *Howard*: he lived at one residence and stayed occasionally at another. *See Howard*, 447 F.3d at 1258-62. Like *Howard*, it is insufficient for purposes of probable cause to support a probation search that the defendant spent the night at the Sunnydale house occasionally. *See id.* at 1262.

**III.     Because this was not a valid probation search, either consent or some other exception the warrant requirement was necessary. No other exception is present here.**

The government cannot justify the warrantless search of 1855 Sunnydale. As discussed above, this was not a valid probation search. And as argued in defendant's motion, the police did not have valid consent from Donecia Colvin to search the residence at 1855 Sunnydale. (Nor was Ms. Colvin even capable of providing consent.) In sum, the circumstances of this case do not satisfy any exception to the warrant requirement.

**CONCLUSION**

For the foregoing reasons, Mr. Whitfield respectfully requests that this Court suppress all evidence arising from the illegal search of 1855 Sunnydale Street, San Francisco, California. If this Court is unable to ascertain the legality of the search based on the parties' submissions, Mr. Whifield requests that an evidentiary hearing be held to resolve this issue.

Dated: August 14, 2007

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/s/

GEOFFREY HANSEN
Chief Assistant Federal Public Defender