BARRY J. PORTMAN
Federal Public Defender
GEOFFREY A. HANSEN
Chief Assistant Federal Public Defender
19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant WHITFIELD

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MARCUS WHITFIELD, ) <br> ) <br> Defendant. ) <br> _____ ) | No. CR 07 - 366 VRW <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> Sentencing Date: March 20, 2008 at 1:30 p.m. |

As this Court knows from reading the presentence report, Marcus Whitfield stands before the Court to be sentenced for possessing a firearm after having been convicted of a felony. The Court further knows from both the hearing on the motion to suppress and the presentence report that the facts leading up to Mr. Whitfield's possession of this weapon are essentially undisputed; Marcus was dating a woman, Cavia Daniels, who lived in Marin County with her two young children. A few weeks before the incident at issue in this case, Ms. Daniels was the victim of an attempted sexual assault in the apartment complex where she and Marcus lived, and she told Marcus that she wanted him to help her get a gun for her own protection; as she later told police, "the only reason Whitfield had the gun was because she encouraged him to buy it for protection."

SENTENCING MEMO                              1

Although Mr. Whitfield attempted to dissuade her from obtaining a gun, he eventually gave in to her demands and agreed to help her trade her car for a gun and ammunition. Mr. Whitfield obtained the gun close to his mother's home in the Sunnydale projects in San Francisco, and he took it to his mother's home to store it until Ms. Daniels could take it back to Marin County. The gun stayed in his mother's home for about a week, because Ms. Daniels did not want to move it while her children were in the car, and virtually every time she came to San Francisco her children were with her.

On April 28, 2007, Daniels and Marcus had a fight while they were visiting Marcus's mother, and Ms. Daniels decided to flag down a police officer to report the fight. At that time she told the police that Marcus had a gun in his room at his mother's house. The room was later searched, and the gun was discovered.

These facts all indicate that Mr. Whitfield's possession of the gun was essentially the result of his girlfriend's insistence, and that fact can and should be taken into consideration when determining what punishment Mr. Whitfield should receive for his crime. More importantly, there are other mitigating facts in this case which place it in a different posture than many if not most of the cases which come before this Court.

The young man who stands before the Court is the product of one of the saddest family histories imaginable. Marcus grew up in the projects, surrounded by gang and narcotic activity. At age two, he was brought to the attention of authorities because his mother had either accidentally or intentionally given him clonidine, a pill often taken by individuals addicted to drugs who cannot sleep. At some point not long thereafter, Mr. Whitfield's father abandoned the family, leaving Marcus to be raised by his mother, who was addicted to crack cocaine. Marcus's mother took out her frustrations in life on Marcus, and starting at age six she began to severely beat him multiple times each week. The beatings lasted until Marcus was 12 years old. At age 9, he was hospitalized at Langley Porter Psychiatric Institute and was diagnosed as having Post Traumatic Stress Disorder, Adjustment Disorder, and possible Attention Deficit Hyperactivity

Disorder. The doctors at Langley Porter found evidence that Marcus had been the victim of serious physical abuse, and had either been exposed to considerable adult sexual activity or had been sexually abused himself, probably by one of his mother's boyfriends.

By age 13, Marcus was using marijuana and alcohol, and by 14 he was using marijuana on a daily basis. He was soon in trouble with the law, and over the next seven years spent time in and out of the California Youth Authority.

Despite this horrific background, there are some bright spots in Mr. Whitfield's life which suggest that he is a person who is salvageable and who holds out the prospect of making a good and productive life for himself. Although there are many indications that Mr. Whitfield has substantial learning disabilities, he obtained his GED while he was in CYA. When he was released in November 2006, Mr. Whitfield took it upon himself to do two things: he started to work in a community training project to learn a skill which would make him employable, and he began to work with his younger siblings in an effort to keep them from following in his footsteps.

Specifically, in January 2007 Marcus enrolled in Project PROUD, a program run by the Young Community Developers to teach job skills to troubled youth. He attended that program every day for over four months, until he was arrested on this offense in April 2007. During the time he was in PROUD, he went a long way towards learning carpentry, elevator repair, and irrigation repair.

Also during this time, Mr. Whitfield would spend many of his afternoons with his younger brother Deion, and his younger sisters Donecia and Renee. Because Marcus's mother remains addicted to crack, these children have spent much of their lives alone trying to care for themselves, just as Marcus did. The Court might recall, for example, that the officers who searched Marcus's mother's home reported that on the day of the search, Donecia (who was 14 at the time and is also developmentally disabled) was home alone and could not tell officers where her mother was, how she could be reached, or when she would return. In an effort to break the cycle, Marcus has spent long hours caring for his brothers and sisters and has tried to help them

stay in school and keep up with their studies. He has, in essence, become the parent for his siblings.

The tragedy of this case is that all of the progress Marcus was making in his life came to a screeching halt when he was arrested for this offense – an offense he neither initiated nor was comfortable participating in. This is not to say that Marcus does not realize that what he did was wrong; he knows full well that he had no business obtaining the gun for his girlfriend, and he takes full responsibility for his actions. But this case is different than most, and it would be a greater tragedy if the progress which Marcus has made is thrown away because of this incident.

Under § 3553(a), this Court may consider the nature of the offense, the background and history of the defendant, the need for just punishment and deterrence, and any other factors which bear on the issue of what would be a just and fair sentence.

Mr. Whitfield has been in custody in county jail for almost a year. He has been punished for his crime, and sadly any substantial additional jail time serves little purpose and would be largely counterproductive. What needs to be done is to get Mr. Whitfield into a stable living environment with vocational and other training so that he can perfect the living skills which will make him a productive member of society.

Counsel has talked to Mr. Whitfield's aunt, Janice Whitfield, who lives in San Jose. She has worked at the Agnews Developmental Center for the developmentally disabled for the last seven years. She has agreed to take Marcus into her home when he is released from jail, and to provide him with a stable family environment should this Court eventually release him into her care and custody. While there, he could participate in both mental health counseling and job training to give him life skills necessary for him to live on his own.

The defendant has entered into an agreement which allows him only to argue for a sentence at the low end of the guideline range. Because this case presents unusual and sympathetic facts, such a sentence is certainly appropriate. Whatever jail sentence this Court imposes, conditions of supervised release should include mental health counseling, job training,

SENTENCING MEMO                                          4

and community service. All of these conditions would assist Mr. Whitfield in picking up where he left off a year ago, and would give him a fighting chance to make it in life.

Dated: March 13, 2008

                                            Respectfully submitted,

                                            BARRY J. PORTMAN
                                            Federal Public Defender

                                                    /s/

                                            GEOFFREY A. HANSEN
                                            Chief Assistant Federal Public Defender